**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JAIME NICHOLE HARSELL,     )
     **Plaintiff,**     )     **Case No. _____**
     )
**v.**     )     **DEMAND FOR JURY TRIAL**
     )
**STATE OF KANSAS, DEPARTMENT**     )
**OF COMMERCE,**     )
     **Defendant.**     )

## COMPLAINT

COMES NOW, the Plaintiff, Jaime Nichole Harsell, by and through her undersigned counsel, Bruce Alan Brumley and Chloe Elizabeth Davis, and for her causes of action against the Defendant, State of Kansas, Department of Commerce, states the following:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jaime Harsell (hereinafter "Plaintiff") is an individual residing in Riley County, Kansas.

2. Defendant, the State of Kansas, Department of Commerce (hereinafter "Defendant"), is a governmental agency in Kansas responsible for implementing, promulgating, and establishing policies, customs, and usages within the boundaries of the State of Kansas.  This Defendant may be served with process pursuant to statutory requirements in Shawnee County, Kansas.

3. This action arises under the Americans with Disabilities Act of 1990, Title 42, Chapter 126, Section 12101, *et. seq.*, of the United States Code, as amended (hereinafter "ADA") related to various sections including employment, accommodation, discharge, retaliation, attorney's fees, and compensatory and punitive damages.

4. This action also arises under the Rehabilitation Act of 1973, 29 U.S.C. § 794, Section 5, *et. seq.*, of the United States Code, as amended (hereinafter "Rehabilitation Act") related to various

1

sections including employment, accommodation, discharge, retaliation, attorney's fees, and compensatory and punitive damages.

5.    This action also arises under the Kansas Act Against Discrimination, Chapter 44, Article 10, Section 1001, *et. seq.*, of the Kansas Statutes Annotated (hereinafter "KAAD"), related to various sections including employment, accommodation, discharge, retaliation, attorney's fees, and compensatory and punitive damages.

6.    As to the claims enumerated herein that arise under federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7.    As to the claims enumerated herein that arise under state law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the claims enumerated herein that arise under state law are so related to claims herein that arise under federal law that they form part of the same case or controversy.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendants are subject to the Court's personal jurisdiction within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 8 as if fully set forth herein.

10.    Plaintiff dually filed separate Charges of Discrimination with the Kansas Human Rights Commission (hereinafter "KHRC") and the Equal Employment Opportunity Commission (hereinafter "EEOC") against the Defendant on or about October 11, 2024.

11.    Plaintiff was issued her Notice of Right to Sue letter dated December 4, 2024, by the EEOC on or about December 9, 2024.

12.    Plaintiff's claims herein were subject to the KHRC/EEOC investigation referenced above.

13.    Plaintiff has exhausted her administrative remedies pursuant to 29 C.F.R. §1601, *et. seq.* and K.S.A. §44-2005, *et. seq.*, or any other rule, law, statute, or regulation.

14.    Plaintiff has fully complied with any and all administrative and jurisdictional prerequisites to the institution of this action in this Court.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

15.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 14 as if fully set forth herein.

16.    Plaintiff suffers from clinically diagnosed Bi-Polar Disorder, Complex Post-Traumatic Stress Disorder, Attention-Deficit/Hyperactivity Disorder, and Traumatic Brain Injury.

17.    Plaintiff was initially hired by Defendant as the Apprenticeship Program Manager of the MeadowLARK Program within Defendant's Office of Apprenticeship on or about January 19, 2024. The MeadowLARK Program receives funding through a State Apprenticeship Expansion Formula grant in the amount $6.3M from the United States Department of Labor aimed at "revolutionizing apprenticeship in Kansas."

18.    During the initial interview process, Defendant informed Plaintiff that the position would operate in a "typical office environment," involve the daily use of a personal computer, email, internet, phone, Microsoft Office software, Adobe software, presentation equipment, among others, and that all Office of Apprenticeship staff work remotely one day per week.

19.    During Plaintiff's onboarding process, on or about February 5, 2024, Plaintiff informed her supervisor, Andre Heath, Deputy Director, Kansas Office of Apprenticeship, that she suffers from the disabilities described in paragraph 16, that she would require accommodation(s) related to those disabilities, and generally described the accommodation(s) she had at her previous work environment to include flexible scheduling and occasional remote work. Mr. Heath then elevated

Plaintiff's request for accommodation to Plaintiff's second level supervisor, Shonda Anderson, M.A.E., Director of Apprenticeship.

20. Shortly thereafter, Ms. Anderson informed Plaintiff, via phone, that her request for accommodation(s) was being denied.

21. Throughout the entirety of Plaintiff's employment with Defendant, one of Plaintiff's similarly situated peers – a fellow grant Program Manager – worked remotely from her home full time, allegedly because she lived in a rural area. Additionally, Ms. Anderson worked remotely two days per week.

22. On February 12, 2024, Plaintiff sent an email to Lisa Smith, Human Resources Professional, Kansas Department of Commerce, requesting accommodation in the form of a hybrid schedule permitting Plaintiff to work remotely two days per week and the ability to stack breaks as needed. Plaintiff's submission included all necessary forms and/or documentation in accordance with Defendant's policy regarding reasonable accommodation procedures. Plaintiff further identified both her mental health provider and her primary care provider and their contact information.

23. On February 26, 2024, Sandra Brown, Human Resources Director, Kansas Department of Commerce, emailed Plaintiff confirmation that Defendant's human resources department had received Plaintiff's request for accommodation(s) and that they would be contacting Plaintiff's medical provider for more information.

24. Because Plaintiff had not received a response from Defendant's human resources department, Plaintiff again raised the topic during a March 4, 2024 phone call with Ms. Anderson. During this phone call, Ms. Anderson informed Plaintiff that she denied Plaintiff's request for accommodation(s) due to "output expectation concerns" and asked Plaintiff why Plaintiff did not

disclose her disabilities during her interview, to which Plaintiff explained that she was concerned about implicit bias related to her disabilities.

25.    On March 5, 2024, Plaintiff sent a follow up email to Defendant's human resources department regarding her February 12, 2024 request for accommodation(s).

26.    On March 6, 2024, Ms. Brown responded to Plaintiff's March 5, 2024 email, stating that they had reached out to Plaintiff's medical providers for information necessary to respond to Plaintiff's request for reasonable accommodation(s). In response, Plaintiff thanked Ms. Brown via email, stating "I feel better knowing it is in your hands. It was challenging to work with my department on it and now I am worried about retaliation."

27.    On March 6, 2024, Plaintiff's mental health provider, Jill Abernathy, LPC, submitted four pages of commentary in response to Defendant's request for information referenced in paragraph 26. LPC Abernathy's commentary identified the following:

   a.    That LPC Abernathy is a Licensed Professional Counselor through the Kansas Behavioral Sciences Regulatory Board and is qualified to diagnose mental health disorders.

   b.    That LPC Abernathy had been treating Plaintiff for mental health/brain disorders dating back to May 2023, but that Plaintiff had been receiving treatment for various diagnoses dating back to 2008.

   c.    That Plaintiff's Bi-Polar Disorder and Post Traumatic Stress Disorder are chronic, debilitating, and negatively impact Plaintiff's functioning.

   d.    That Plaintiff's disabilities cause Plaintiff to experience trouble with focus and concentration, to experience anxiety and mania when under strict deadlines, and

5

that it is beneficial for Plaintiff to be in her home – a relaxed and familiar environment – in order to regulate her symptoms during those times.

e. That despite Plaintiff's disabilities, and upon review of the position description provided by Defendant, that Plaintiff is able to perform all of her duties with the assistance of accommodation(s).

f. That Plaintiff's diagnoses substantially limit her ability to function both personally and professionally when compared to the general population, further describing Plaintiff's episodes of mood fluctuations, panic attacks, anxiety, irritability, insomnia, distractibility, among others.

28. LPC Abernathy's March 6, 2024 correspondence ultimately concluded that Plaintiff "requires flexibility in her work schedule to accommodate the chronic and debilitating nature of her mental health diagnoses" and that Plaintiff "would benefit from a schedule that allows her to work from home a minimum of two days per week."

29. Despite LPC Abernathy's March 6, 2024 commentary, on March 14, 2024, Plaintiff received correspondence from Ms. Brown denying Plaintiff's request for reasonable accommodation(s), stating that Defendant had determined that Plaintiff's medical diagnoses do not satisfy the definition of a disability under the ADA.

30. Between March 6, 2024 and March 14, 2024, Ms. Brown did not contact Plaintiff to discuss Plaintiff's request for accommodation(s), Plaintiff's disabilities or related symptomology, or Plaintiff's concerns about retaliation.

31. On or about March 20, 2024, Plaintiff again spoke with Ms. Anderson regarding her request for accommodation(s) being denied, whereupon Ms. Anderson informed Plaintiff that her work output was "being monitored" and was "expected to be high."

32. On several occasions between March 2024 and November 2024, Ms. Anderson and Mr. Heath accused Plaintiff of "overthinking," not following the "simple solution," and working beyond the scope of her position.

33. Between March 2024 and July 2024, Plaintiff experienced several instances of retaliation and differential treatment from her supervisory staff, namely Mr. Heath and Ms. Anderson. These instances included public admonishment for items not within Plaintiff's control or that Plaintiff's peers did not receive the same admonishment for, more intense scrutinization of Plaintiff's work product in comparison to Plaintiff's peers, less flexibility in Plaintiff's schedule in comparison to the schedules of her peers, among others.

34. On or about July 26, 2024, during a one-on-one meeting with Mr. Heath, Plaintiff informed Mr. Heath that her disabilities had been flaring up more recently as a result of the retaliatory environment she had been experiencing and causing Plaintiff to utilize paid time off.

35. On or about September 9, 2024, Plaintiff received her mid-year performance review from Mr. Heath where Mr. Heath noted that "Jaime has nearly exhausted sick/leave time with work absences and has mentioned there are significant life changes that may impact work schedules. We need to adhere to policy and communicate through proper channels if there are situations that need to be addressed." Other than this commentary from Mr. Heath, Mr. Heath's feedback was largely positive or neutral, and did not identify any specific instances of performance deficiency.

36. During the month of September 2024, during a one-on-one meeting with Ms. Anderson, Ms. Anderson expressed that Plaintiff's "life factors" were impacting her ability to do job-related travel, despite the fact that Plaintiff had just recently returned from several days of work-related travel and despite the fact that Plaintiff's disabilities had only interfered with Plaintiff's work-related travel on one previous occasion.

37.    On or about September 11, 2024, Plaintiff submitted another request for reasonable accommodation(s) via email to Ms. Brown, stating that it had come to Plaintiff's attention that aspects of her disabilities were "being viewed with a negative bias and reflected in [Plaintiff's] performance evaluation," that Defendant's "policies, procedures, team culture, and supervision/leadership style have exacerbated [Plaintiff's] flare-ups and symptoms and ability to function in other life activities (…)," and that Plaintiff would like to revisit her request for additional days of remote work. Plaintiff further attached a note from Plaintiff's medical provider, Adam Zuzelski, MD, stating the following: "Patient has four medical conditions that are possible disabilities under the Americans with Disabilities Act. Her counselor and primary care provider both believe that there should be accommodations provided in order to maintain appropriate work production and functionality. Patient should be provided these [accommodations] per the ADA."

38.    On or about September 12, 2024, Plaintiff completed and submitted all necessary documentation pursuant to Defendant policy and identified Plaintiff's medical providers to be contacted regarding Plaintiff's request.

39.    On or about September 26, 2024, Plaintiff received correspondence from Ms. Brown denying Plaintiff's request for reasonable accommodation(s), stating that Defendant had determined that Plaintiff's medical diagnoses do not satisfy the definition of a disability under the ADA.

40.    Ms. Brown did not contact either Plaintiff or Dr. Zuzelski at any point between Plaintiff's September 11, 2024 request for accommodation(s) and Defendant's September 26, 2024 denial.

41.    On or about October 11, 2024, Plaintiff submitted a charge of disability discrimination and retaliation against Defendant to the EEOC/KHRC.

42.     Prior to Plaintiff's October 11, 2024 charge of discrimination, it had been Defendant's practice to permit employees flexibility in relationship to their one day per week remote workday in the event the employee was required to travel or tend to other in-person work duties on their designated remote workday. However, on October 15, 2024, Plaintiff requested that her designated remote workday, which was scheduled for the following day on October 16, 2024, be moved one day to October 15, 2024, because Plaintiff was scheduled to travel to the Kansas City metro area for a work meeting on her designated remote workday. Mr. Heath denied Plaintiff's request.

43.     Following Plaintiff's September 11, 2024 renewed request for reasonable accommodation(s) and Plaintiff's October 11, 2024 charge before the EEOC, Mr. Heath and Ms. Anderson treated Plaintiff differently than her peers by increasingly issuing Plaintiff negative public feedback, refusing to work with Plaintiff's schedule, and overall exhibiting standoffish body language and behavior toward Plaintiff.

44.     On or about November 5, 2024, because Defendant refused to meaningfully engage in the interactive process with Plaintiff, refused to grant Plaintiff's requests for reasonable accommodation, and continually retaliated against Plaintiff, Plaintiff was constructively discharged from her employment with Defendant.

<b><u>COUNT I – FAILURE TO ACCOMMODATE CONSTITUTING<br>DISCRIMINATION ON THE BASIS OF DISABILITY</u></b><br><b><u>(In Violation of the Americans with Disabilities Act of 1990, as Amended, the<br>Rehabilitation Act of  1973, and the Kansas Act Against Discrimination)</u></b>

45.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 44 as if fully set forth herein.

46.     At all times pled herein and material hereto, Plaintiff's mental and physical diagnoses as described in paragraph 16 constitute "disabilities" within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff's diagnoses are physical and/or mental impairments that

substantially limit one or more of Plaintiff's major life activities, such as focusing, thinking, communicating, reading, sleeping, among others.

47.    At all times pled herein and material hereto, Defendant herein constitutes a covered entity employer subject to the requirements of the ADA in that Defendant is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

48.    At all times pled herein and material hereto, Defendant herein constitutes a program or activity subject to the requirements of the Rehabilitation Act in that Defendant operates a program or activity receiving federal financial assistance or is a program or activity conducted by an executive agency of the United States and is a department, agency, special purpose district, or other instrumentality of the state of Kansas.

49.    At all times pled herein and material hereto, Defendant herein constitutes an employer subject to the requirements of the KAAD in that Defendant employs four or more persons and is the state of Kansas and/or a political or municipal subdivision thereof.

50.    At all times pled herein and material hereto, Plaintiff herein constitutes an employee within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was employed by the Defendant herein and the Defendant herein was not Plaintiff parents, spouse, or child.

51.    At all times pled herein and material hereto, Plaintiff herein constitutes a "qualified individual" within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, as evidenced by Plaintiff's medical provider(s) opining as such, lack of formal discipline related to performance deficiencies issued to Plaintiff by Defendant, Plaintiff's largely positive and neutral mid-year performance review, among others.

52.    At all times pled herein and material hereto, Plaintiff requested reasonable accommodation(s) to Plaintiff's position that did not present any undue hardship for Defendant, as evidenced by Plaintiff's similarly situated peers and superiors that were able to perform their positions remotely and the several instances wherein Plaintiff successfully performed her position remotely.

53.    At all times pled herein and material hereto from February 5, 2024 forward, Defendant had notice of Plaintiff's disabilities, as evidenced by Plaintiff's repeated disclosures of said disabilities to several of her supervisory staff and members of Defendant's human resources department.

54.    For each day between February 5, 2024 and November 5, 2024 that Defendant refused to permit Plaintiff to work remotely two days per week, Defendant failed to accommodate Plaintiff in an act of discrimination in violation of the ADA, Rehabilitation Act, and KAAD.

55.    Defendant discriminated against Plaintiff as an individual with a disability by failing to accommodate Plaintiff's disabilities.

56.     Defendant discriminated against Plaintiff as an individual with a disability in regard to her overall compensation from Defendant.

57.    Defendant discriminated against Plaintiff as an individual with a disability in regard to her job training, and other terms, conditions, and privileges of her employment.

58.    Defendant was aware of the disabilities and other simple concerns related to accommodation throughout this complaint.

59.    While employed by Defendant and/or under the control of Defendant, Plaintiff was treated differently than other employees in the same and similar position.

11

60. Upon Plaintiff's request for reasonable accommodation(s) for her disabilities, Defendant failed to engage in the interactive process with Plaintiff, Plaintiff did not receive any form of accommodation, and was ultimately forced to resign by Defendant.

61. Defendants herein had knowledge of the discrimination toward Plaintiff, as evidenced by Plaintiff's numerous complaints to Defendant.

62. At all times pled herein, Defendant failed to take reasonable steps to prevent this discrimination from occurring and to protect Plaintiff from said discrimination.

63. At all times pled herein, Defendant did nothing to prevent and/or remedy the discrimination committed against Plaintiff by Defendant employees.

64. Defendant failed to properly train their supervisors, leadership, and/or human resources representatives concerning their duties and obligations under civil rights laws, including the ADA, Rehabilitation Act, and KAAD.

65. As a direct and proximate result of Defendant's discriminatory actions herein this case, Plaintiff has suffered and will continue to suffer emotional distress, humiliation, a deprivation of income, as well as other monetary and non-monetary damages.

66. Plaintiff is entitled to attorney's fees as provided in the ADA and the Rehabilitation Act and for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count I of her Complaint, finding that Defendant failed to accommodate Plaintiff's disabilities constituting discrimination on the basis of disability in violation of the Americans with Disabilities Act of 1990, as amended, and the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination for an award of back pay and benefits including interest, an award of front pay and

benefits including interest, an award of compensatory damages, the costs of this action, reasonable attorney's fees, and for other such relief as the Court deems just and equitable.

**COUNT II – DISPARATE TREATMENT CONSTITUTING DISCRIMINATION ON THE BASIS OF DISABILITY
(In Violation of the Americans with Disabilities Act of 1990, as Amended, the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination)**

67.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 66 as if fully set forth herein.

68.     At all times pled herein and material hereto, Plaintiff's mental and physical diagnoses as described in paragraph 16 constitute "disabilities" within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff's diagnoses are physical and/or mental impairments that substantially limit one or more of Plaintiff's major life activities.

69.     At all times pled herein and material hereto, Defendant herein constitutes a covered entity employer subject to the requirements of the ADA in that Defendant is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

70.     At all times pled herein and material hereto, Defendant herein constitutes a program or activity subject to the requirements of the Rehabilitation Act in that Defendant operates a program or activity receiving federal financial assistance or is a program or activity conducted by an executive agency of the United States and is a department, agency, special purpose district, or other instrumentality of the state of Kansas.

71.     At all times pled herein and material hereto, Defendant herein constitutes an employer subject to the requirements of the KAAD in that Defendant employs four or more persons and is the state of Kansas and/or a political or municipal subdivision thereof.

72.     At all times pled herein and material hereto, Plaintiff herein constitutes an employee within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was employed by the Defendant herein and the Defendant herein was not Plaintiff parents, spouse, or child.

73.     At all times pled herein and material hereto, Plaintiff herein constitutes a "qualified individual" within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, as evidenced by Plaintiff's medical provider(s) opining as such, lack of formal discipline related to performance deficiencies issued to Plaintiff by Defendant, Plaintiff's largely positive and neutral mid-year performance review, among others.

74.     At all times pled herein and material hereto, Plaintiff suffered an adverse employment action when Defendant began monitoring and increasing Plaintiff work output, when Defendant publicly admonished Plaintiff for items outside of her control or for items that Plaintiff's peers did not receive similar admonishment for, when Defendant noted Plaintiff's use of sick/leave time in her mid-year performance review, when Defendant baselessly expressed that Plaintiff's "life factors" were impacting Plaintiff's ability to do job-related travel, when Defendant suddenly began refusing provide the same level of flexibility regarding Plaintiff's schedule as was afforded to other Defendant employees, among others.

75.     Ultimately, Plaintiff suffered an adverse employment action in the form of constructive discharge when Defendant refused to meaningfully engage in the interactive process with Plaintiff, refused to grant Plaintiff's requests for reasonable accommodation, and continually retaliated against Plaintiff, causing Plaintiff's constructive discharge.

76.     The adverse employment actions described in paragraphs 74 and 75 occurred in circumstances giving rise to an inference of discrimination, such as Defendant's repeated denials

of Plaintiff's requests for accommodation(s), Defendant permitted another grant Program Manager to work remotely full time because said grant Program Manager lived in a rural area, Defendant inquiring why Plaintiff did not disclose her disabilities during her interview, Defendant not seeking clarification and/or exploring Plaintiff's repeated concerns surrounding retaliation, Defendant monitoring and increasing Plaintiff's work output expectations following Plaintiff's request for accommodation(s), Defendant accusing Plaintiff of "overthinking" and working outside the scope of her position, Defendant publicly admonishing Plaintiff where Plaintiff's peers were not, Defendant noting Plaintiff's sick/vacation leave usage in Plaintiff's mid-year performance review, Defendant baselessly expressing that Plaintiff's "life factors" were impacting Plaintiff's ability to do job-related travel, Defendant's sudden refusal to provide the same level of flexibility regarding Plaintiff's schedule as was afforded to other Defendant employees, among others.

77.     Defendant discriminated against Plaintiff as an individual with a disability by failing to accommodate Plaintiff's disabilities.

78.      Defendant discriminated against Plaintiff as an individual with a disability in regard to her overall compensation from Defendant.

79.     Defendant discriminated against Plaintiff as an individual with a disability in regard to her job training, and other terms, conditions, and privileges of her employment.

80.     Defendant was aware of the disabilities and other simple concerns related to accommodation throughout this complaint.

81.     While employed by Defendant and/or under the control of Defendant, Plaintiff was treated differently than other employees in the same and similar position.

82. Upon Plaintiff's request for reasonable accommodation(s) for her disabilities, Defendant failed to engage in the interactive process with Plaintiff, Plaintiff did not receive any form of accommodation, and was ultimately forced to resign by Defendant.

83. Defendants herein had knowledge of the discrimination toward Plaintiff, as evidenced by Plaintiff's numerous complaints to Defendant.

84. At all times pled herein, Defendant failed to take reasonable steps to prevent this discrimination from occurring and to protect Plaintiff from said discrimination.

85. At all times pled herein, Defendant did nothing to prevent and/or remedy the discrimination committed against Plaintiff by Defendant employees.

86. Defendant failed to properly train their supervisors, leadership, and/or human resources representatives concerning their duties and obligations under civil rights laws, including the ADA, Rehabilitation Act, and KAAD.

87. As a direct and proximate result of Defendant's discriminatory actions herein this case, Plaintiff has suffered and will continue to suffer emotional distress, humiliation, a deprivation of income, as well as other monetary and non-monetary damages.

88. Plaintiff is entitled to attorney's fees as provided in the ADA and the Rehabilitation Act and for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count II of her Complaint, finding that Plaintiff was subject to disparate treatment on the basis of her disabilities constituting discrimination on the basis of disability in violation of the Americans with Disabilities Act of 1990, as amended, and the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination for an award of back pay and benefits including interest, an award of front

pay and benefits including interest, an award of compensatory damages, the costs of this action, reasonable attorney's fees, and for other such relief as the Court deems just and equitable.

### COUNT III – RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
### (In Violation of the Americans with Disabilities Act of 1990, as Amended, the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination)

89. Plaintiff incorporates by reference all aforementioned paragraphs 1 through 88 as if fully set forth herein.

90. At all times pled herein and material hereto, Defendant herein constitutes a covered entity employer subject to the requirements of the ADA in that Defendant is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

91. At all times pled herein and material hereto, Defendant herein constitutes a program or activity subject to the requirements of the Rehabilitation Act in that Defendant operates a program or activity receiving federal financial assistance or is a program or activity conducted by an executive agency of the United States and is a department, agency, special purpose district, or other instrumentality of the state of Kansas.

92. At all times pled herein and material hereto, Defendant herein constitutes an employer subject to the requirements of the KAAD in that Defendant employs four or more persons and is the state of Kansas and/or a political or municipal subdivision thereof.

93. At all times pled herein and material hereto, Plaintiff herein constitutes an employee within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was employed by the Defendant herein and the Defendant herein was not Plaintiff parents, spouse, or child.

94. At all times pled herein and material hereto, Plaintiff herein constitutes a "qualified individual" within the meaning of the ADA, Rehabilitation Act, and KAAD in that Plaintiff was

17

able to perform the essential functions of her job with or without reasonable accommodation, as evidenced by Plaintiff's medical provider(s) opining as such, lack of formal discipline related to performance deficiencies issued to Plaintiff by Defendant, Plaintiff's largely positive and neutral mid-year performance review, among others.

95.    Plaintiff engaged in protected activity under the ADA, Rehabilitation Act, and KAAD when Plaintiff informed her supervisor of her disabilities and requested accommodation(s) on February 5, 2024, when Plaintiff submitted a request for accommodation(s) to Defendant's human resources department on February 12, 2024, when Plaintiff again raised the topic of her request for accommodation(s) to her supervisor on March 4, 2024, when Plaintiff sent a follow-up email concerning her request for accommodation(s) on March 5, 2024 expressing that she was "worried about retaliation," when Plaintiff again raised the issue of her need for accommodation(s) to her supervisor on March 20, 2024, when Plaintiff informed her supervisor that her disabilities had been flaring up as a result of the retaliatory environment causing Plaintiff to utilize paid time off in July 2024, when Plaintiff submitted another request for accommodation(s) on September 11, 2024, when Plaintiff filed a charge of discrimination with the EEOC/KHRC on October 11, 2024, among others.

96.    At all times pled herein and material hereto, Plaintiff suffered an adverse employment action when Defendant began monitoring and increasing Plaintiff work output, when Defendant publicly admonished Plaintiff for items outside of her control or for items that Plaintiff's peers did not receive similar admonishment for, when Defendant noted Plaintiff's use of sick/leave time in her mid-year performance review, when Defendant baselessly expressed that Plaintiff's "life factors" were impacting Plaintiff's ability to do job-related travel, when Defendant suddenly began

18

refusing provide the same level of flexibility regarding Plaintiff's schedule as was afforded to other Defendant employees, among others.

97.    Ultimately, Plaintiff suffered an adverse employment action in the form of constructive discharge when Defendant refused to meaningfully engage in the interactive process with Plaintiff, refused to grant Plaintiff's requests for reasonable accommodation, and continually retaliated against Plaintiff for engaging in protected activity, causing Plaintiff's constructive discharge.

98.    The adverse employment actions described in paragraphs 96 and 97 occurred in circumstances giving rise to an inference of discrimination, such as Defendant's repeated denials of Plaintiff's requests for accommodation(s), Defendant permitted another grant Program Manager to work remotely full time because said grant Program Manager lived in a rural area, Defendant inquiring why Plaintiff did not disclose her disabilities during her interview, Defendant not seeking clarification and/or exploring Plaintiff's repeated concerns surrounding retaliation, Defendant monitoring and increasing Plaintiff's work output expectations following Plaintiff's request for accommodation(s), Defendant accusing Plaintiff of "overthinking" and working outside the scope of her position, Defendant publicly admonishing Plaintiff where Plaintiff's peers were not, Defendant noting Plaintiff's sick/vacation leave usage in Plaintiff's mid-year performance review, Defendant baselessly expressing that Plaintiff's "life factors" were impacting Plaintiff's ability to do job-related travel, Defendant's sudden refusal to provide the same level of flexibility regarding Plaintiff's schedule as was afforded to other Defendant employees, among others.

99.    A causal – or more accurately a direct – connection exists in relation to engaging in the protected activity described throughout this complaint and the adverse action by Defendant in constructively discharging Plaintiff's employment and failing to engage in the interactive process with Plaintiff.

19

100.    Defendant denied accommodation and did not take such requests for accommodation in good faith, and instead retaliated against such requests, discriminated against Plaintiff's disabilities, which is demonstrated by Plaintiff's forced resignation taking place only a few weeks after Plaintiff's second formal request for reasonable accommodation and request to further engage in the interactive process.

101.    At all times pled herein, Defendant failed to take reasonable steps to prevent this retaliation from occurring and to protect Plaintiff from said retaliation.

102.    At all times pled herein, Defendant did nothing to prevent and/or remedy the retaliation committed against Plaintiff by Defendant employees.

103.    Defendant failed to properly train their supervisors, leadership, and/or human resources representatives concerning their duties and obligations under civil rights laws, including the ADA, Rehabilitation Act, and KAAD.

104.    As a direct and proximate result of Defendant's retaliatory actions herein this case, Plaintiff has suffered and will continue to suffer emotional distress, humiliation, a deprivation of income, as well as other monetary and non-monetary damages.

105.    Plaintiff is entitled to attorney's fees as provided in the ADA and the Rehabilitation Act and for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count III of her Complaint, finding that Plaintiff was subject to retaliation for engaging in protected activity in violation of the Americans with Disabilities Act of 1990, as amended, and the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of

20

compensatory damages, the costs of this action, reasonable attorney's fees, and for other such relief as the Court deems just and equitable.

## DAMAGES

106.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 105 above as if full set forth herein.

107.    Defendant herein discriminated against Plaintiff on the basis of her disabilities with malice and reckless indifference as to the legally protected rights of the Plaintiff.

108.    As a result, Plaintiff has suffered monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, among other non-monetary damages.

109.    Defendant has more than 500 employees.

110.    Plaintiff prays for compensatory and noneconomic damages in the amount of $300,000.00, as Defendant employs upwards of 500 employees.

111.    Plaintiff prays for injunctive relief in the form of reinstatement with backpay including benefits, reasonable accommodations, and interest incurred.

112.    Plaintiff alternatively prays for injunctive relief in the form of backpay including benefits with interest incurred, and front pay including benefits with interest incurred, in place of reinstatement.

113.    Plaintiff prays for damages in the amount of reasonable attorney's fees.

114.    Plaintiff prays for damages in the amount of court costs incurred in bringing this action.

115.    Plaintiff prays for any other damages and relief as this Court may deem necessary, just, and equitable as allowed by the ADA, Rehabilitation Act, and KAAD or any other relevant source of law related to these claims or within the power of the Court.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on all Counts of her Complaint, finding that Plaintiff was discriminated and retaliated against on the basis of her disabilities and for engaging in protected activity in violation of the Americans with Disabilities Act of 1990, as amended, the Rehabilitation Act of 1973, and the Kansas Act Against Discrimination. Plaintiff prays for an award of compensatory and noneconomic damages in the amount of $300,000.00, an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of reasonable attorney's fees, an award of the costs of this action, and for other such relief as the Court deems just and equitable.

Respectfully submitted,

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
Brumley Law Office
2348 SW Topeka Blvd., #201
Topeka, KS 66611
P: (785) 267-3367 / F: (785) 233-3161
chloe@brucebrumleylaw.com
bruce@brucebrumleylaw.com

## DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, and pursuant to Federal Rule 38(b)(1), demands a trial by jury

on all of these issues in the above-captioned case.

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
Brumley Law Office
2348 SW Topeka Blvd., #201
Topeka, KS 66611
P: (785) 267-3367 / F: (785) 233-3161
chloe@brucebrumleylaw.com
bruce@brucebrumleylaw.com

23